UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAND O'LAKES, INC. | No. 1:15-cv-01937-DAD-MJS |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS |
| DAIRYAMERICA, INC.; SILLIKER, INC.; and DOES 1 through 50, inclusive, | (Doc. Nos. 24, 26) |
| Defendants. | |

This matter came before the court on August 16, 2016, for hearing on motions to dismiss by defendants DairyAmerica and Silliker. (Doc. Nos. 24, 26.) Attorneys Justin Fields and Francisca Mok appeared telephonically on behalf of defendants DairyAmerica, Inc. and Silliker, Inc., and attorney Seth Hilton appeared telephonically on behalf of plaintiff Land O'Lakes, Inc. After oral argument, the motions were taken under submission. For the reasons stated below, defendants' motions to dismiss are denied.

BACKGROUND

In its operational complaint, plaintiff Land O'Lakes, Inc. ("Land O'Lakes") alleges the following. Plaintiff is a Minnesota corporation that produces and distributes dairy products, including a product named Skim Milk Powder. (Doc. No. 19 at 2–3, ¶¶ 1, 8–9.) Plaintiff tested the Skim Milk Powder for contaminants and pathogens at a laboratory located in Fresno,

1

California, which was operated by defendant DairyAmerica, Inc. ("DairyAmerica"), a California corporation. (*Id.* at 2–3, ¶¶ 2, 10, 12.) Sometime prior to September 2013, DairyAmerica retained defendant Silliker, Inc. ("Silliker"), a Delaware corporation, to assist with its laboratory operations. (*Id.* at 3, ¶ 11.)[1]

Plaintiff supplied one type of Skim Milk Powder, Skim Milk Powder Low Heat-International ("SMPLH-I") to customers in China. (*Id.* at 3, ¶ 13.) At the time, the Chinese government maintained certain requirements for milk powder imports such as SMPLH-I, mandating that any such powders contain a maximum of 2.00 parts per million of nitrites. (*Id.* at 3, ¶¶ 14–15.) To meet Chinese standards, Land O'Lakes established written specifications for SMPLH-I that required a maximum of 2.00 parts per million of nitrites. (*Id.* at 3, ¶¶ 16–17.) The specifications also established a specific nitrite testing method, the "l/lot" method. (*Id.* at 3, ¶ 18.) Under the "l/lot" method, testing must be conducted on a composite sample made up of samples taken from an entire production lot. (*Id.*) Plaintiff provided the specifications to defendants before September 2013, and defendants both agreed to comply with the standards required by the Chinese government. (*Id.* at 3–4, ¶¶ 19–20.) Independently from its contract with plaintiff, it was also defendants' regular practice to test other contaminants and pathogens using this same "l/lot" method. (*Id.* at 4, ¶ 24.)

In September 2013, plaintiff produced three lots of SMPLH-I, lots 31312375, 31312934, and 31314010 (collectively "the Product"), intended for delivery to a customer in China known as Top-Team (Tianjin) International Trade Co., Ltd. ("Top-Team"). (*Id.* at 4, ¶¶ 21–22.) Plaintiff provided defendants with samples from each sub-lot of the Product. (*Id.* at 4, ¶ 23.) However, defendants only performed nitrite testing on the first two sub-lots of each lot. (*Id.* at 4, ¶ 19.) Based on this partial testing, defendants determined that the Product complied with Chinese nitrites standards and authorized release of all three lots for shipment to China. (*Id.* at 5, ¶ 25.) Plaintiff, relying on defendants' test results, then shipped all three lots of the Product to China. (*Id.* at 4–5, ¶¶ 26–27.)

---

[1] Plaintiff is a citizen of Minnesota, while defendant DairyAmerica is a citizen of California, and defendant Silliker is a citizen of Illinois and Delaware. (*Id.* at 2, ¶¶ 1–3.)

During late January or early February 2014, Top-Team notified plaintiff that testing conducted in China revealed a substantial amount of the Product did not comply with Chinese nitrite standards. (*Id.* at 5, ¶ 28.) Plaintiff was unaware of any problem with the Product before this time. (*Id.* at 5, ¶ 29.) Based on the high level of nitrites in the Product, Top-Team rejected approximately 368,168.20 pounds of SMPLH-I. (*Id.* at 5, ¶ 29.) Plaintiff, finding it impractical to ship the rejected portion of the Product back to the United States, sold the rejected Product in July 2014 within China at a reduced price. (*Id.* at 5–6, ¶ 33.)

Plaintiff tested retained samples of the Product through the "l/lot" method, and results of that testing confirmed that the SMPLH-I failed to comply with Chinese standards for nitrites. (*Id.* at 5, ¶ 30.) Additionally, defendants conducted "l/lot" retesting on two of the three lots of the Product, lots 31312934 and 31314010, and also found that these lots failed to comply with Chinese standards. (*Id.* at 5, ¶ 31.)

On February 27, 2014, Laboratory Supervisor for plaintiff Land O'Lakes, A'leisha Yodsnukis, contacted one of defendants' laboratory representatives, Trish Arzaga, to inquire as to why retesting results differed from defendants' original test reports. (*Id.* at 5, ¶ 32.) Arzaga stated that when defendants conducted their original nitrite testing, they tested only the first sub-lot of each lot, and performed no further testing if the results obtained initially were within specifications. (*Id.*)

Plaintiff alleges that if defendants had properly tested the Product, they would have discovered that it did not comply with the Chinese nitrite standards and would not have authorized its shipment to China. (*Id.* at 5–6, ¶ 33.) Plaintiff would have been able to sell the product in the United States, which permits higher nitrite levels in Skim Milk Powder. (*Id.* at 6, ¶ 33.) As a result of defendants' failure to conduct proper testing, plaintiff incurred total losses in excess of $500,000.00. (*Id.* at 6, ¶ 35.)

PROCEDURAL BACKGROUND

On December 30, 2015, plaintiff filed their original complaint against defendants. (Doc. No. 1.) Plaintiff filed their second amended complaint ("SAC"), the operative complaint in this case, on April 18, 2016. (Doc. No. 19.) In the SAC, plaintiff asserts two claims against

3

defendants: (i) professional negligence, and (ii) breach of contract. (Doc. No. 19 at 6–7.) Plaintiff seeks the award of damages and attorneys' fees. (*Id.* at 8.)

On May 23, 2016, defendants DairyAmerica and Silliker each filed separate motions to dismiss plaintiff's SAC. (Doc. No. 24, 26.) On June 16, 2016, plaintiff filed an opposition to both defendants' motions. (Doc. No. 27.) Defendants filed their replies on June 27, 2016. (Doc. Nos. 28, 31.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by any amendment. *See Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

1031 (9th Cir. 2008).  Leave to amend is properly denied, however, if amendment would be futile.  *See Thinket Ink Information Resources, In. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

## ANALYSIS

Defendants move to dismiss the SAC in its entirety, on the following three grounds: (i) plaintiff has not identified a duty owed by defendants independent of the alleged contract, as required to state a professional negligence claim, and has otherwise failed to adequately allege facts supporting a professional negligence claim; (ii) plaintiff has not adequately alleged a breach of contract claim because the SAC fails to plead either the existence of a contract or the breach thereof; and (iii) both plaintiff's professional negligence and breach of contract claims are time-barred.  The court addresses each of defendants' arguments below.

**I.      Professional Negligence Claim**

      **a.   Existence of an Independent Tort Law Duty**

Defendants first move to dismiss plaintiff's professional negligence claim, arguing that plaintiff has failed to allege a tort law duty, independent of the alleged contract between the parties.

In determining availability of a tort or contract cause of action, the key factor is the source of the duty forming the basis of the action.  *See generally*, Carl J. Circo, *Placing the Commercial and Economic Loss Problem in the Construction Industry Context*, 41 J. Marshall L. Rev. 39, 79 (2007); *Erlich v. Menezes*, 21 Cal. 4th 543, 551–53 (1999) ("Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated."); *see also Kucharczyk v. Regents of University of California*, 946 F. Supp. 1419, 1445 (N.D. Cal. 1996).  Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.  *See Erlich*, 21 Cal. 4th at 551–53; *see also State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal. App. 4th 1227, 1232 (2015).  The purpose of this rule is to ensure the distinction between tort and contract law, thereby preventing disproportionate liability and allowing parties to allocate risk by agreement.  *See* Circo, *supra* at 83; *see also Erlich*, 21

5

Cal. 4th at 552 (noting that "[i]f every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies").

California courts have recognized circumstances where independent tort duties exist separately from any related contractual obligations. For example, individuals contracting for the provision of services have an independent tort law duty to perform their services in a competent and reasonable manner. *Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal. 4th 992, 998 (1994) (citation omitted); *see also see also Britz Fertilizers, Inc. v. Bayer Corp.*, No. 1:07-cv-00846-OWW-SMS, 2008 WL 341628, at *9 (E.D. Cal. Feb. 5, 2008) (noting that service contracts give rise to an implied duty of care requiring services to be performed in a reasonable manner). While the California Supreme Court has not explicitly addressed the issue of professional services contracts as opposed to services contracts in general, the California Court of Appeals has construed professional service contracts as also giving rise to independent tort duties. *See City and County of San Francisco v. Cambridge Integrated Servs. Group, Inc.*, No. C 04-1523 VRW, 2007 WL 1970092, at *3 (N.D. Cal. 2007) (noting that although California Supreme Court decisions have not addressed "the issue of professional services contracts as opposed to mere services contracts," California Court of Appeals cases "continue to apply a rule that negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract"); *see also Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1435 (2003) ("Under the common law the established rule is the negligent failure to exercise reasonable care and skill in undertaking to perform a service contract of this type is a tort, as well as a breach of contract."). Federal courts in this circuit applying California law have similarly found that a breach of a professional service contract gives rise to a cognizable tort claim. *See Corelogic, Inc. v. Zurich American Ins. Co.*, No. 15-cv-03081-RS, 2016 WL 4698902, at *5 (N.D. Cal. Sept. 8, 2016) (denying a motion to dismiss a negligence claim based on contractual breach, and emphasizing that "defendants negligently performed an attendant professional service"); *Architectural Resources Group, Inc. v. HKS, Inc.*, No. C 12-5787 SI, 2013 WL 568921, at *4–5 (N.D. Cal. Feb. 13, 2013) (denying a motion to dismiss a tort claim based on

breach of a services contract, because "[h]ere, [the relevant party] has alleged the elements of a professional negligence claim").

As noted, defendants DairyAmerica and Silliker move to dismiss plaintiff's professional negligence claim for failure to identify a duty owed to defendants independent of the parties' alleged contract. (Doc. Nos. 24 at 12–14; 26 at 10.) Defendants collectively make four arguments. First, they argue that plaintiff has not alleged circumstances such as undue coercion or intentional misconduct that would allow their breach of contract claim to give rise to a tort claim. (Doc. Nos. 24 at 11–12; 26 at 11.) Second, defendants argue that professional service contracts do not involve independent tort duties, denying that California courts endorse this principle. (Doc. Nos. 28 at 8; 31 at 8.) Third, they contend that even if professional services contracts involve independent tort duties, such duties extend to consumers and to employees rather than to businesses economically harmed by inaccurate testing such as alleged here. (Doc. Nos. 28 at 8; 31 at 7, 9–10.) Fourth, defendant Silliker argues the nitrite testing in question is not a professional service, and that plaintiff's SAC does not allege that such testing requires any specialized skill or equipment. (Doc. No. 31 at 7.)

Plaintiff, in opposition, argues that professional negligence cases always involve duties independent of related contractual obligations. (Doc. No. 27 at 11.) Plaintiff contends that defendants' laboratory testing qualifies as a professional service because it requires specialized skill, equipment and experience, requires trained technicians for operation and management, and is dangerous if carried out improperly. (*Id.* at 15)

The court finds defendants' arguments to be unpersuasive. In the SAC plaintiff specifically alleges a claim of professional negligence, asserting that defendants breached their "duty to exercise the same level of skill, prudence and diligence in testing the Product as other members of their profession would have exercised under the circumstances." (Doc. No. 19 at 6.) These allegations of professional negligence are sufficient to plead an independent tort law duty and support a negligence cause of action. *See Music Group Macao Commercial Offshore Limited v. Foote*, No. 14-cv-03078, 2015 WL 3882448, at \*16 (N.D. Cal. June 23, 2015) ("[I]t has been recognized that an action for professional negligence constitutes both a tort and a breach of

contract.") (citing *Cambridge Integrated Servs. Group, Inc.*, 2007 WL 1970092, at *3–5 (N.D. Cal. 2007)); *Britz Fertilizers, Inc.*, 2008 WL 341628, at *9; *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 17 (2000)("Although the parties may have entered into contracts governing some aspects of their relationship, the damages awarded below were for a harm distinct from those contracts, a harm arising out of the failure of [defendants] to provide proper estimates of energy output, adequately gauge the impact of government regulations, and more generally provide appropriate services."). While defendants argue that professional services contracts do not implicate independent tort duties, this argument is unconvincing in light of the numerous federal and California court decisions, discussed above, indicating to the contrary. *See Cambridge Integrated Servs. Group, Inc.*, 2007 WL 1970092, at *3–5 (observing that California courts "continue to apply a rule that negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract").

Moreover, because the defendants' tort law duty to conform to professional standards stems from a contractual relationship with plaintiff, the obligation necessarily extends to plaintiff. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1197 (9th Cir. 2001) (noting that, in the context of professional services contracts, the tort law duty to conform to professional standards is rooted in a contractual relationship and run in favor of other contract parties); *cf. Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958) (finding that the duty to comply with professional may also run to persons not party to the relevant professional services contract, and listing factors courts should consider when determining the scope of the obligation). Finally, while defendants deny that nitrite testing involves a professional service, such arguments do not speak to the adequacy of the pleadings, which is the focus of the court's inquiry at the motion to dismiss stage. *See Cambridge Integrated Servs. Group, Inc.*, 2007 WL 1970092, at *3–5 (finding that "it would be premature to make such a determination [as to whether defendant's services were professional in nature] at the motion to dismiss stage"). Accordingly, defendant's motion to dismiss plaintiff's professional negligence claim for failure to allege an independent tort law duty is denied.

/////

/////

**b. Pleading Sufficiency**

Defendants also argue that plaintiff's professional negligence claims is inadequately pled.

To state a cognizable claim for professional negligence, a plaintiff must allege the following four elements: (i) the existence of the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (ii) breach of that duty; (iii) a causal connection between the negligent conduct and the resulting injury; and (iv) actual loss or damage. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).[2]

Defendants argue that plaintiff's professional negligence claim fails under federal pleading standards. (Doc. Nos. 24 at 10–14; 26 at 10.) In particular, defendants DairyAmerica and Silliker both argue that plaintiff has not alleged a specific professional duty of care owed to it. (Doc. Nos. 24 at 14; 26 at 12). Defendant DairyAmerica additionally argues that plaintiff has failed to allege breach and injury, as plaintiff alleges the same breach and injury in both its tort and contract claims. (Doc. No. 24 at 13.)

Plaintiff argues that its professional negligence claim meets federal pleading standards (Doc. No. 27 at 16–17) and the court agrees. Plaintiff's SAC alleges a specific duty owed by defendants, "a duty to exercise the same level of skill, prudence, and diligence in testing the Product as other members of their profession would have exercised under the circumstances." (Doc. No. 19 at 6, ¶ 37.) It also alleges that defendants breached their duty of care by using an improper method of nitrite testing. (*Id.* at 6, ¶ 38.) Finally, plaintiff alleges causation and damages. Specifically, the SAC alleges that plaintiff shipped the Product to China in reliance on the defendants' improper nitrite testing results; that the customer in China rejected the product because it failed to satisfy the applicable nitrites standards; and that plaintiff incurred resulting losses in excess of $500,000. (*Id.* at 6, ¶¶ 39–40.) No more is required under federal pleading standards. *See, e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1208-17 (9th Cir. 2011); *Porter v. Johnes*, 319

---

[2] In federal court, the sufficiency of the plaintiff's pleadings is governed by the Federal Rules of Civil Procedure and federal law interpreting those rules, and not by California law. *See Rees v. PNC Bank, N.A.,* 308 F.R.D. 266, 273 (N. D. Cal. 2015); *Wang & Wang LLP v. Banco Do Brasil, S.A.*, No. Civ. S-06-00761 DFL KJM, 2007 WL 915232, at *3 (E.D. Cal. Mar. 26, 2007).

F.3d 483, 494 (9th Cir. 2003) (stating that a complaint need only satisfy the minimal notice pleading requirements of Rule 8 in order to survive a dismissal motion). Furthermore, contrary to defendants' arguments, plaintiff is not precluded from alleging both a tort and breach of contract claim premised on the same wrongful act and injury. *See Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999); *see also Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1031–32 (9th Cir. 1999) (observing that "the prevailing plaintiff may not recover tort damages and contract damages for the same wrong, even though the plaintiff might have set forth alternate theories of recovery").

Accordingly, plaintiff has adequately alleged a tort claim against defendants, and defendants' motions to dismiss the professional negligence claims will be denied.

## II.  **Breach of Contract Claims**

Defendants argue that plaintiff has not alleged a cognizable contract claim, because the SAC does not adequately plead either existence of a contract or breach.

The elements of a cause of action for breach of contract are: (i) existence of the contract, (ii) plaintiff's performance or excuse for nonperformance, (iii) defendant's breach, and (iv) resulting damages to the plaintiff. *Oasis West Realty, LLC v. Goldman*, 51 Cal. App. 4th 811, 821 (2011) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).[3]

"Rule 8 of the Federal Rules of Civil Procedure provides that, in alleging the existence of a contract, a plaintiff may set forth the contract verbatim, attach it as an exhibit, or plead it according to its legal effect." *Dias v. JP Morgan Chase, N.A.*, No. 5:13-CV-05327-EJD, 2014 WL 2890255, at *3 (N.D. Cal. Mar. 19, 2015); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2011 WL 311376, at *10 (N.D. Cal. Jan. 28, 2011) (stating that plaintiff must allege sufficient facts "to allow the Court to draw a reasonable inference that [there was a] definite promise, supported by consideration, that would establish a binding and enforceable contract"). Federal procedural rules do not require a plaintiff to attach the contract or recite its terms verbatim in order to allege the contract's existence. *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-

---

[3] *See* fn. 2, above.

10

01290 WHA, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016); *Wynes v. Kaiser Permanente Hospitals*, No. 2:10-cv-0702- MCE-GGH, 2011 WL 1302916, at *11 (E.D. Cal. Mar. 31, 2011) ("While a claim for breach of contract need not allege specific terms of the contract, allegations of an existence of a written contract, performance under the contract, breach of contract, causation, and damages is sufficient to meet the federal notice pleading standards."); *Mortgage Indus. Solutions, Inc. v. Collabera, Inc.*, No. CIV–S–2636–KJM, 2011 WL 1135907, at *2–3 (E.D. Cal. Mar. 25, 2011). However, allegations representing "mere legal conclusions that a contract existed . . . will be insufficient to survive a motion to dismiss." *Iglesia Cristiana Luz y Verdad v. Church Mut. Ins. Co.*, No. 15-cv-05621-RMW, 2016 WL 692839, at *10–11 (N.D. Cal. Feb. 19, 2016); *Garibaldi v. Bank of Am. Corp.*, No. C 13-02223 SI, 2014 WL 172284, at *3 (N.D. Cal. Jan. 15, 2014).

Defendants argue that plaintiff's breach of contract claim fails because plaintiff has not adequately alleged that a contract between the parties exists or the breach thereof. (Doc. Nos. 24 at 15–17; 26 at 12–14.) With respect to the existence of the contract, defendants assert that the SAC is inadequate for three reasons: (i) it does not plead the substance of the alleged agreement, (Doc. Nos. 24 at 15; 26 at 12–13); (ii) it does not allege the requisite meeting of the minds, (Doc. Nos. 24 at 16; 26 at 14–15); and (iii) the testing specifications allegedly provided to defendants by plaintiff do not represent a contract, (Doc. Nos. 24 at 16; 26 at 14–15). With respect to breach, defendants argue that SAC is deficient because plaintiff has not specifically alleged which provision of the contract defendants violated. (Doc. No. 24 at 17.) In opposition to defendants' motions to dismiss, plaintiff argues that the breach of contract claim is adequately pled, and that the SAC sufficiently alleges all required elements of the cause of action. (Doc. No. 27 at 20–22.)

The court concludes that plaintiff has adequately alleged the breach of contract claim. For one, plaintiff has alleged the substance of the agreement between the parties, specifically asserting that "DairyAmerica and Silliker contracted and agreed to test composite samples" of the Product using the "l/lot" testing protocol. (Doc. No. 19 at 3–4, 7, ¶¶ 18–20, 43.) Plaintiff has also attached to the SAC the testing specifications allegedly agreed to by defendants, and has identified the date of performance as September 2013. (Doc. No. 19 at 4, 10–23.) These

11

allegations, while perhaps not elaborate, are sufficiently clear and specific to allow a "reasonable inference" that a binding and enforceable agreement existed between plaintiff and defendants. *DeLeon*, 2011 WL 311376, at 10; *see also Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sols., Inc.*, No. C-13-04262-RMW, 2013 WL 6073362, at *2 (N.D. Cal. Nov. 15, 2013) ("Although the complaint could have been more specific, it sets out the type of services requested, the dates of performance, and the contract price"); *cf. Allen v. Nextera Energy Operating Services, LLC*, No. C 12-01610 LB, 2012 WL 1918930, at *2 (N.D. Cal. May 25, 2012) (dismissing plaintiff's breach of contract claim because plaintiff "has not alleged any facts regarding when the implied contract took effect, how it was formed, or its specific terms"). While defendants argue that plaintiff's allegations lack the required specificity, the federal procedural rules do not require the "detailed factual allegations" which defendants seek. *Iqbal*, 556 U.S. at 678 ("As the Court held in *Twombly*, [citation omitted], the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *see also Kaar v. Wells Fargo Bank, N.A.*, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) (observing that federal procedural rules do not require a plaintiff to attach the contract or recite its terms verbatim). To the extent that defendants dispute the truth of plaintiff's allegations made in support of its breach of contract claim, such factual disputes are not suitable for resolution at this stage of the litigation. *See generally Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1111 (9th Cir. 2003) ("A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.") (quotation omitted); *see also Starr*, 652 F.3d at 1216-17 ("The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'").

Plaintiff has also adequately alleged a breach of contract. The SAC alleges the conduct forming the basis of the breach, specifically asserting that "DairyAmerica and Silliker breached their contractual obligations to Land O'Lakes by only testing samples from the first two sub-lots of each lot." (Doc. No. 19 at 7, ¶ 44.) These allegations give defendant "fair notice of the basis"

of plaintiff's claim, and are thus sufficient to support a cognizable breach of contract action. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899–900 (9th Cir. 2013). While defendants contend that "a plaintiff must allege with specificity what provision of the contract the defendant breached," such specificity is not required under federal pleading standards.[4] Accordingly, defendants' motions to dismiss plaintiff's breach of contract claim will be denied.

## III.   Statute of Limitations

Defendants also move to dismiss the SAC on statute of limitations grounds.

There is a two year statute of limitations for breach of contract and professional negligence claims under California law. Cal. Code Civ. Proc. § 339; *Kagan v. Wachovia Securities, LLC*, No. 09-5337 SC, 2010 WL 2730464, at *2 (N.D. Cal. July 7, 2010). "Statutes of limitation normally begin to run when a claim accrues—that is, when the cause of action is complete with all of its elements." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quotation omitted); *see also Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).

One exception to the general rule of accrual is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the claim. *See Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002); *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.*, 115 Cal. App. 4th 1145, 1161 (2004).

A defendant asserting a statute of limitations defense has the burden of proving that the action is time-barred. *Jaeger*, 2016 WL 520985 at *10. However, a plaintiff whose complaint

---

[4] Some district courts in this circuit have suggested that facts supporting a breach of contract claim must be alleged with specificity, citing to decisions of California courts. *See, e.g.*, *Lazo v. Summit Management Co., LLC*, No. 1:13-cv-002015-AWI-JLT, 2014 WL 3362289, at *20 (E.D. Cal. July 9, 2014); *Kroetch v. BAC Home Loan Services*, No. C 11-2860 MEJ, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011). However, "[e]ven when claims are based on state law, federal procedural rules govern the pleading standard." *Lanini v. JPMorgan Chase Bank*, No. 2:13-cv-00027 KJM EFB, 2014 WL 1347365, at *5 n.2 (E.D. Cal. Apr. 4, 2014); *Rees v. PNC Bank, N.A.,* 308 F.R.D. 266, 273 (N. D. Cal. 2015) (concluding that California heightened pleading standards for punitive damages claims to irreconcilably conflict with Rules 8 and 9 of the Federal Rules of Civil Procedure which governed that action); *see generally Yess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (applying federal pleading standards to state law fraud claims). Plaintiffs therefore need only meet notice pleading requirements of Federal Civil Procedure Rule 8(a) to allege a cognizable breach of contract claim.

reflects on its face that his claim would be barred absent application of the discovery rule must specifically plead facts showing: (i) "the time and manner of discovery," and (ii) "the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808; *see also Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014).

In their motions to dismiss, defendants argue that plaintiff's negligence and breach of contract claims are barred by the applicable statute of limitations. (Doc. Nos. 24 at 14, 17–18; 26 at 16.) Defendants contend that plaintiff's claims accrued no later than September 2013, when defendants allegedly failed to follow the agreed-upon testing protocols. (Doc. Nos. 24 at 17; 26 at 16.) Defendants argue that plaintiff filed this action more than two years after the date of accrual, on December 30, 2015. (*Id.*) Defendants also note that plaintiff has not alleged the applicability of the discovery rule in their SAC, and therefore cannot invoke this exception to the general rules of accrual. (Doc. Nos. 24 at 17; 26 at 16.) Plaintiff, meanwhile, contends that the negligence and breach of contract claims are timely, because the claims were not complete with respect to all of their elements until 2014, less than two years before plaintiff commenced the action. (Doc. No. 27 at 18–19.)

The court concludes that plaintiff's claims are not subject to dismissal as untimely. The SAC alleges that the Product was rejected by Chinese buyers in late January or early February 2014, and that plaintiff only incurred damages after reselling the Product in July 2014. (Doc. No. 19 at 5–6, ¶¶ 28, 34–35.) Plaintiff's tort and contract claims therefore could only have accrued in 2014, after the causation and injury elements forming the basis of those claims had emerged. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (noting that "a cause of action accrues when the elements of the cause of action, including damage occur"); *Buschman v. Anesthesia Business Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) ("California cases have held that where monetary damages is an element of the offense, accrual of the action does not occur until pecuniary loss is suffered"); *cf. Ventura County Humane Society for the Prevention of Cruelty to Children and Animals v. Holloway*, 40 Cal. App. 3d 897, 907 (1974) (stating that "it is the uncertainty as to the fact of damage rather than its amount which negatives the existence of a cause of action based on either breach of contract and/or

negligence"). Because plaintiff's claims accrued in 2014, plaintiff's complaint of December 30, 2015, was filed within the two year statute of limitations period. Defendants' motions to dismiss plaintiff's professional negligence and breach of contract claims on statute of limitations grounds are therefore denied.

## CONCLUSION

For the reasons set forth above, the court denies defendants DairyAmerica and Silliker's motions to dismiss (Doc. Nos. 24, 26) the SAC.

IT IS SO ORDERED.

Dated: **February 6, 2017**

_____
UNITED STATES DISTRICT JUDGE